UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD KENYON JR., | No. 2:11-cv-01330 TLN GGH P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| R. HILL, WARDEN, | |
| Respondent. | |

*Introduction and Summary*

Perhaps the most difficult aspect of adjudicating this habeas petition is ascertaining the issues. Petitioner makes scattershot, and sometimes, repetitive allegations, some of which might not be exhausted. He attempts to raise new issues in the traverse, the exhaustion of some being in question. The undersigned has done his best in determining what to adjudicate. For the reasons given herein, all recognized claims should be denied.

*Factual Background*

Before detailing the issues, it is helpful to set forth the factual and procedural background of the case. Like respondent, the undersigned relies on the opinion of the Court of Appeal in this respect.

1

In June 2007, Plumas County Sheriff's Deputy Matthew Beatley was on patrol in a marked police vehicle. Around 10:50 p.m., Deputy Beatley saw a dark pickup truck-driven by defendant-swerve, nearly hit the sidewalk, then correct itself. Thinking defendant might be intoxicated, Deputy Beatley began following the pickup, noting that it continued to swerve in its lane. After seeing the pickup cross the white fog line approximately three times, Deputy Beatley decided he should pull defendant over and he activated his lights and radioed a request for backup.

After Deputy Beatley turned on his siren, defendant pulled over onto the shoulder, but before Deputy Beatley could stop him, defendant rapidly accelerated and made a U-turn back onto the street. With his lights and siren still on, Deputy Beatley continued his pursuit of the pickup. Traveling at around 60 miles per hour, defendant made a left turn, nearly losing control of the pickup and almost colliding with a parked car.

A short time later Deputy Beatley was joined by California Highway Patrol Officer Robert Story, who was driving in a marked patrol car with his siren and lights on. When defendant made a hard right turn into the second entrance of an apartment complex, Deputy Beatley and Officer Story continued following him as he drove through the parking lot at 35 to 40 miles per hour. Defendant left the apartment complex by the first entrance and drove back into the apartment complex through the second entrance. Defendant repeated his loop, leaving through the first entrance and reentering through the second entrance of the apartment complex. Deputy Beatley contacted Officer Story by radio and suggested Officer Story break off from the chase and attempt to block the first entrance with his vehicle.

As defendant continued his circuit through the apartment complex, Officer Story circled back, attempting to block defendant's route at the first entrance. Defendant failed to slow down as he drove through the first entrance, and he sideswiped Officer Story's vehicle. Officer Story avoided a head-on collision by pulling to the left. Following the collision, defendant continued driving for roughly 100 yards (in the direction of the second entrance), then slammed on his brakes and got out of the pickup truck. Deputy Beatley had been following defendant and got out of his vehicle as well. Defendant began running toward Deputy Beatley, but quickly ran in the opposite direction when Deputy Beatley removed his handgun and ordered defendant to stop. Deputy Beatley gave chase, and as defendant was looking back over his shoulder at Deputy Beatley, his knee collided with Officer Story's front left headlight. Defendant fell to the ground, and the officers handcuffed him. Defendant was combative, belligerent, and smelled of alcohol. A breath test revealed he had a blood alcohol content of .12 percent to .14 percent.

Defendant was charged with assault with a deadly weapon on a peace officer, driving with a willful or wanton disregard for the safety of persons or property while fleeing from a pursuing police officer, driving under the influence of alcohol, driving with .08 percent or more blood alcohol level, and driving with a suspended license. The information also alleged defendant had a prior serious felony conviction that qualified as a strike, that within the past 10 years defendant had been convicted twice for driving under the influence, and that defendant had been convicted for driving after his license was suspended.

2

> Defendant pled no contest to driving under the influence, driving with .08 percent or more blood alcohol level, and driving with a suspended license. He also admitted the prior serious felony and strike allegations, as well as the prior convictions for driving under the influence and driving with a suspended license. A jury found him guilty of the assault charge and the evading charge. The trial court sentenced him to 12 years 4 months in prison and imposed a consecutive sentence of 16 months for a prior conviction of escape.

People v. Kenyon, 2009 WL 190141 *1-2 (2009).

On appeal, petitioner argued that the trial court erred in not *sua sponte* instructing on the theory of "accident," and that his counsel was ineffective in not requesting that instruction. Petitioner also argued that he was improperly sentenced on overlapping crimes. The *sua* sponte instruction issue is not relevant to the habeas petition.

The first state habeas petition was that filed in the Superior Court. Many of the arguments raised here were also raised therein. Petitioner claimed that his counsel was ineffective because he failed to present exonerating witnesses; the trial court erred in denying his Marsden motion; petitioner's vehicle (showing the damage) had been sold, and that the police officers gave perjured testimony. The petition was denied on the merits and on procedural grounds.

The Court of Appeal petition raised the Marsden issue, a juror bias issue, and perjury by the police officers. This petition was denied on it merits.

Petitioner changed the issues somewhat in the state supreme court. His first claim was made on account of ineffective assistance of counsel: a "failure to investigate the log book" (dispatch entries relating events in the chase that night); failure to bring [unidentified] witnesses to trial; the sale of the truck used by petitioner; failure to obtain an impartial jury; and failure to investigate (impeach) the police officer who gave "perjured" testimony based on deficient police reports. The state supreme court petition was denied with the following case citations: People v. Duvall, 9 Cal. 4th 464, 474 (1995) (conclusory allegations do not warrant relief); In re Swain, 34 Cal. 2d 300, 304 (1949) (allegations vague or not stated with sufficient particularity); In re Lindley, 29 Cal. 2d 709 (1947) (sufficiency of the evidence not a proper grounds for habeas corpus (as opposed to appeal)); In re Dixon, 41 Cal. 2d 756, 759 (1953) (matters which should have been raised on appeal are not cognizable in habeas corpus).

/////

3

*Issues*

Petitioner expressly raises only ineffective assistance of counsel issues in his federal petition. He does so by listing a pot pourri of somewhat overlapping and unexplained deficiencies under "A" and "B" in the petition:

1. Failure to investigate the log journal report of the arresting officer;
2. Failure to investigate for and present defense witnesses;
3. Failure to prevent the sale of evidence;
4. Failure to investigate/challenge perjured testimony

Petitioner also raises what appears to be a sufficiency of the evidence charge in that he contends that he only intended to evade and not assault one of the officers on the scene. However, as respondent observes, petitioner may be making his contention in the form of a sentencing argument. No points and authorities are contained within the petition.

Respondent does not argue a lack of exhaustion (on account of the citations by the state supreme court), but rather attacks the petition on the merits as conclusory or meritless in any event. Because petitioner did not elaborate in the petition on why his counsel was not effective, nor produce evidence outside the record concerning favorable witnesses *et cetera*, the conclusory nature of responsive argument matches that of the petition.

Evidently securing some prison legal assistance, petitioner included a points and authorities within the traverse. However, while legal citation is made and general legal principles discussed, the traverse attacks what happened in this trial in only the most general and unpersuasive form. It is as if the federal court is the trier of fact, and the number of exhibits attached to the traverse should be reviewed *de novo* for whatever favorable inference can be drawn for petitioner. The traverse also appears to add an unexhausted issue of jury bias in that one of the jurors was allegedly an employee of the Plumas County Court.

As did respondent, the undersigned will dispense with any discussion concerning the exhaustion status of issues. An unexhausted claim may be denied on its merits. 28 U.S.C. section 2254(b)(2).

/////

4

*Discussion*

Vague and conclusory allegations cannot support habeas relief. Greenway v. Schriro, 653 F.3d 790, (9th Cir. 2011); Cox v.DelPapa, 542 F.3d 669, 681 (9th Cir. 2008) ("Without any specification of the mitigating evidence that counsel failed to unearth, Cox's claim must fail."); James v. Borg, 24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." Such is the problem with the instant petition concerning the ineffective assistance of counsel claims. Although defense counsel is criticized for not investigating potential witnesses, no potential witness testimony available to defense counsel, or any at all for that matter, is presented by this petition. Clearly, whether defense counsel should have sought out witnesses or other evidence and the like is beside the habeas point unless what was done was material, i.e., testimony/evidence so strong such that it would have undermined confidence in the verdict. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052 (1984). The best petitioner can do is state that perhaps someone was around who saw what happened along, with the presumption that what that unknown person saw would be favorable to petitioner. Similarly, petitioner does not indicate what material evidence might have been available for trial in addition to the pictures taken of his truck, if petitioner's truck had not been sold. Finally, petitioner argues that the police officers committed perjury because their testimony did not agree with petitioner's version vis-à-vis the vehicle assault—a classical *ipse dixit*. Again, none of petitioner's contentions is backed up by extra-record evidence, and they must fail due to their conclusory nature.

The issue regarding the log journal and to an extent, the perjury allegations, are more akin to a sufficiency of the evidence issue than ineffective counsel. Petitioner argues strenuously that he did not ever intend to, or in fact, assault one of the peace officers on the scene with his vehicle, and that the officers must have lied about the nature of the vehicle assault. Petitioner asserts in the traverse (the petition contains nothing but a conclusion) that the log journal of the officer would have proven that the police officers told untruths about the ramming of the car. Somehow, the argument goes, that the two minutes shown elapsed for the chase of plaintiff would have shown that the ramming did not take place. When petitioner (admittedly intoxicated) noticed the

5

lights of the police car, he argues that he made the snap decision to park his car in a safe area of a parking lot; in so doing he was politely attempting to evade the officer only for awhile:

> Assuming this official record is correct, plaintiff's (sic) truck was only pursued for TWO MINUTES [not so] and plaintiff was placed in custody less than ONE MINUTE later. Quincy, California is only a small town…In the process, Officer Beatley noticed defendant's truck being operated, and probably knew plaintiff was not allowed to drive. Rather than dangle an empty fish hook at the Neon [a car being observed prior to petitioner's truck], Officer Beatley chose to use a "gill net" on the truck, knowing the probability of an arrest and/or citations was far higher…. Regardless, plaintiff was pursued for those two minutes, and subsequently arrested for the noted D.U.I and Driving Without a License.
> As noted before, plaintiff does not dispute these facts. The primary consideration is the falsified testimony of both Patrolman Story, and Officer Beatley, regarding the final moments prior to arrest. Patrolman Story states that plaintiff rammed his pick-up int[o] the C.H.P. car. This is somewhat corroborated by Officer Bentley's testimony, but he admitted not having direct line-of-sight to support his testimony.
> In the entire two minutes of the incident, the purported outcome of traveling from Point "A" to Point "B" (to properly secure plaintiff's vehicle), only to willingly "ram" another vehicle, holds no credibility….These events are not supportable by anything other than the testimony of the Officers involved….

Traverse at 6-7.

Not only does the log journal reflect an approximate four minute chase and arrest, see Traverse at 6; Answer at 10,[1] the argument is a total non-sequitur. No convincing evidence is submitted to demonstrate that the near four minutes of elapsed time was insufficient for petitioner to drive into the parking lot, do skidding "laps" in that parking lot and ram a patrol vehicle. Four minutes is a long time when driving a vehicle. Petitioner goes on to argue that petitioner's truck should not have been viewed as having been able to perform laps in the apartment complex or ram another vehicle simply because petitioner's truck was old and its maintenance history was not known [despite the fact that he had already been driving erratically for some time]. He then states that the speeds in the parking lot of the apartment must have been "reckless," and that no self-respecting Officer would have pursued in that situation. [It seems now as if petitioner's truck

---

[1] The Traverse notes that the dispatch log shows the identification of petitioner's vehicle at 22:53:53 with the description of erratic driving. Slightly less than a minute later the officer, who must have been following/chasing petitioner was able to retrieve and broadcast the license number. Precisely two minutes after the license broadcast, the Traverse provides that "all pursuit ended in the parking lot of Valley Heights Apartments, and petitioner was taken into custody, one minute after that.

really was able to speed and evade the officers, if this argument is to be believed].  Petitioner goes on to characterize the damage to the vehicles after collision to be minor, presuming that if petitioner meant to ram a vehicle, he would have done so at the highest speed possible to inflict the greatest potential for injury.  [Also, evidently, having the pictorial evidence alone really was sufficient for petitioner to make this argument.]  Then, petitioner supposes that the Officers made up the ramming story because the blocking of petitioner's vehicle by one patrol car was "improper," and they needed a cover for this improper action [if the action blocking petitioner's truck was improper, it was so regardless of whether petitioner rammed the truck or was forced into an accidental collision; so the need to invent the ramming story was non-existent].  In the alternative, petitioner argues the theoretically possible scenario where the "aggressive" action by the police officer in blocking petitioner's vehicle in the parking lot with his patrol car, made an accidental collision much more likely than an intentional ramming.  Perhaps, if one believes the argument petitioner now makes.  But see People v. Kenyon, 2009 WL 190141 *3 (2009) (an accidental collision would not have been a defense to vehicle assault when defendant had the general intent to drive recklessly).

      All of this is to say that the jury heard the evidence, made its credibility findings, and made its decision contrary to petitioner's suppositions.  In order to prevail on a sufficiency of the evidence argument, petitioner must not only show that no reasonable jury could have come to the conclusion that it did, Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781 (1979), but also that no reasonable appellate court could have upheld the verdict under this standard.  Juan H. v. Allen, 408 F.3d 1262, 1278 (n.14) (9th Cir. 2005).  See also Boyer v. Belleque, 659 F.3d 957, 964 (9th Cir. 2011) (discussing a "double dose of deference" for sufficiency of the evidence issues).  Petitioner's suppositions above, and his plea to believe him now, as he did not testify at trial, not the Officers who supplied the only testimonial evidence as to what transpired, are light years away from proving insufficiency of the evidence, or any form of perjury.

      To the extent that petitioner alleges a sentencing error under state law (unlawfully duplicating sentences for the same act), not only is such an alleged error one of state law and not actionable in federal habeas corpus, Rhoades v. Henry, 638 F.3d 1027, 1053 (9th Cir. 2011)

(refusing to adjudicate a state law sentencing "double counting" issue),[2] but it is completely devoid of argument in these federal proceedings. The undersigned considers it to be an abandonment of the issue in any event. Even if there were a federal issue involved, it is petitioner's burden to show that the state Court of Appeal acted unreasonably in rejecting such a claim. Harrington v. Richter, 131 S. Ct. 770, 785-86 (2011). Petitioner has gone no distance in meeting his burden.

Petitioner follows this up with an unexhausted issue identified for the first time in any meaningful fashion in the Traverse—a juror who was an employee of the Plumas County Court was permitted to sit on the jury. This contention is brought within the parameters of an ineffective assistance claim, i.e., his counsel should have objected to this presumptive error. However, no case citation is supplied for the premise that an employee of a court is presumptively prejudiced against the defendant whose trial is in that court. Indeed, it is the prosecutor, not the court, whose job it is to secure a conviction. *Cf* 28 U.S.C. sections 1865, 1866(c) setting forth the presumptive exclusions from jury service which do not include service as a court employee; see, e.g., People v. Martinez, 47 Cal. 4th 911, 939-944 (2010) discussing the jury service of a clerk of the county juvenile hall who had been accidentally contacted by the district attorney investigator; see Cal. Code Civ. Pro 202.5 (repealed) (former exemption of judges and peace officers from juries); section 203 listing *only* exemptions from jury service in California, none of them having to do with court employees. To the extent that petitioner alleges that a peremptory challenge should have been issued on the asserted basis, petitioner supplies no facts concerning any actual bias exhibited by this juror.

*Conclusion*

IT IS HEREBY RECOMMENDED that the petition for habeas corpus should be denied. No Certificate of Appeal (COA) should be granted as there are no issues which qualify for such.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days

---

[2] See People v. Kenyon, supra *4 explaining the Cal. Penal Code section 654 issue.

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 19, 2013

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE